WORTHINGTON FROTHINGHAM, AS ADMINISTRATOR, ETC., OF JOHN McARDLE, DECEASED, RESPONDENT, v. ASHBEL H. BARNEY AND OTHERS, APPELLANTS.

*Dissolution of corporations — power of trustees — cannot exchange assets for stock in other corporations.*

Upon the dissolution of a joint stock corporation, it is the duty of the trustees to convert the assets into money, and distribute the proceeds among the stock holders. They have no right to exchange the assets, or any portion thereof, of the old association, for the corporate stock of any corporation, without the consent of all the stockholders.

A stockholder not consenting to such exchange, may recover the value of his stock, so wrongfully disposed of.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee, and also from an order appointing a receiver of the assets of Wells, Fargo & Co., made pursuant to such judgment.

A joint stock association, known as Wells, Fargo & Co., had been dissolved by the action of the managing partners, pursuant to the articles of association, on the 1st day of November, 1866, the plaintiff's testator being at that time the owner of 100 shares of the stock.

This action was brought against the managing partners (called trustees or directors in the articles of association) of the joint stock association at the time of its dissolution, who as such, were authorized by the articles of association, by unanimous vote, to dissolve said joint stock company, and either by themselves or their agents, settle and adjust the business and affairs thereof.

The complaint alleged the dissolution of the joint stock company by the said defendants, on the 1st day of November, 1866, pursuant to the articles of association, but that, instead of settling and adjusting the business and affairs of said company, they did, in violation of their duty as trustees, and in fraud of the rights of the plaintiff and other stockholders, transfer and convey, without adequate consideration, or any consideration received by or for the plaintiff, the good will of the business of said association, and a large portion of the property belonging to said joint stock company, to the Holladay Overland Mail and Express Company, and that they refused to distribute among the stockholders, assets in their possession amounting to over $500,000.

The relief prayed for was, as against the individual defendants, that a receiver of the assets of the association or copartnership be appointed; that said defendants account for and transfer to said receiver the assets in their hands; and that they also account to said receiver, for any property received by them in return for that conveyed to the defendant, Wells, Fargo & Co., and pay to him the amount of any loss arising from such transfer

The referee gave judgment against the defendants for the sum of $31,393.76, and directed that a receiver of the assets of the joint stock association, known as Wells, Fargo & Co., be appointed.

The action was commenced by John McArdle, and upon his death was continued in the name of the present plaintiff.

*Samuel Hand,* for the appellants. The dissolution being proper, and the partnership being dissolved thereby, it was expressly within the powers of the defendants " to settle and adjust the business and affairs thereof " according to the best of their judgment, making the most of its assets, of which the circumstances would admit. It was neither beyond their powers, nor a violation of their duties, to " sell the (so called) good-will at private sale, without notice, or

to take in exchange therefor other property than cash. (Pars. on Partnership, 393, 541, 544 *n; Tyrell* v. *Washburn*, 6 Allen, 466; *Butchard* v. *Dresser*, 4 De Gex, M. & G., 542; *Robbins* v. *Fuller*, 24 N. Y., 570; *Herberton* v. *Jepherson*, 10 Barr [Pa.], 124; *Hedges* v. *N. E. Screw Co.*, 1 R. I., 19; S. C., 3 id., 19; *Tread-well* v. *Salisbury*, 7 Gray, 393, 406.) But even were it conceded, that the act of the trustees was beyond their powers, and technically, a step outside the limits of their discretion as managing partners in winding up the company, they, nevertheless, are not, in the absence of any fraud, willful misconduct or breach of trust for their own benefit, liable personally to the plaintiff. Even if a "trustee," strictly, he is not personally liable if he acted in good faith, and with ordinary care, diligence and prudence. (*Brown* v. *Campbell*, Hopk., 233; *Pierson* v. *Thompson*, 1 Edw., 212, 222; *Atty.-Gen.* v. *Exeter*, 2 Russ., 45; *Hodges* v. *Screw Co.*, 1 R. I., 344; *Thompson* v. *Brown*, 4 Johns. Ch., 619; *Tolbolt* v. *Branch Bank of Mobile*, 11 Ala. [N. S.], 191; *Smith* v. *Prattville Manuf. Co.*, 29 id., 503.) Directors, in the active execution of their functions as such, are not personally liable to stockholders, except for "willful dereliction of duty or violation of the trust reposed in them." (1 Edw. Ch., 84, 513; 3 Paige, 222; 38 Barb., 181; 4 L. R. [Appellate Series], 386; 1 R. I., 348.)

*Nathaniel C. Moak*, for the respondent. The association was a partnership, and each member had all the rights, and was subject to all the liabilities, of a partner. (*Wells* v. *Gates*, 18 Barb., 554, 556, 557; *Dennis* v. *Kennedy*, 19 id., 517, 526; *Townsend* v. *Goewey*, 19 Wend., 428; *Cross* v. *Jackson*, 5 Hill, 478, 480; *Williams* v. *Bank*, 7 Wend., 542; *Atkins* v. *Hunt*, 14 N. H., 205; *Cutler* v. *Thomas*, 25 Vt., 73; *Hess* v. *Werts*, 4 Serg. & Rawle, 356.) A majority of stockholders have no right to divert the property of the minority, because by so doing the pecuniary interests of all will be subserved. (*Mann* v. *Butler*, 2 Barb. Ch., 362; 1 Perry on Trusts [2d ed.], § 285; *Stevens* v. *Rutland, etc.*, 29 Vt., 545; S. C., 1 Am. Law Reg. [O. S.], 154.) A majority of the stockholders of a corporation have power to dissolve it, but they cannot dispose of, or exchange the interest of a stockholder in its assets, without his consent. (*McCurdy* v. *Myers*, 44 Penn. St., 535.) The

funds of a joint stock company, established for the purpose of one undertaking, cannot be applied to another, and the attempt so to apply them, though sanctioned by all the directors, and by a large majority of the shareholders, is illegal. (*Simpson* v. *Directors, etc.*, 8 House Lords Cases, 711; *Lynde* v. *Eastern, etc.*, 36 Beav., 19; see cases cited by counsel in *Erie Railway Co.* v. *Vanderbilt*, 12 N. Y. Sup. Ct. [5 Hun], 124; *McCrary* v. *Junction, etc.*, 9 Ind., 358; *State* v. *Bailey*, 16 id., 46; Kerr on Injunctions, 558.) As to stockholders who do not assent, such a transaction is absolutely void. (*Campbell's Case*, 8 Eng., 678; L. R. [9 Ch.], 1; *Re Era Ins. Society*, 9 Weekly R., 67; 3 Law Times [N. S.], 314; 30 Law J. [Ch.] [N. S.], 137; 6 Jur. [N. S.] 1334; 2 Perry on Trusts [2d ed.], § 769; id., 768; *Ringgold* v. *Ringgold*, 1 Harris & Gill [Md.], 11, 25; *Taylor* v. *Galloway*, 1 Ohio, 232, 234; *Niles* v. *Smith*, 2 Code R., 3; Gen. T. 6th Dist., 1 U. S. Law Mag., 37; *Bush* v. *Cole*, 28 N. Y., 361.) A trustee authorized to sell can sell only for cash (*Russell* v. *Russell*, 36 N. Y., 581, 583–586; *Ives* v. *Davenport*, 3 Hill, 373; *Palmer* v. *Williams*, 24 Mich., 328; *Davis' Appeal*, 14 Penn. St., 371), and in the ordinary manner (*Van Arsdale* v. *Joiner*, 44 Ga., 173), though the credit be given in good faith. (*Swoyer's Appeal*, 5 Penn. St. [5 Barr], 377; *Hurst* v. *Fisher*, 1 Harris & Gill, 88; *Sciple* v. *Irwin*, 30 Penn. St., 513; *Kornesnan* v. *Monagan*, 24 Mich., 36.)

BOARDMAN, J. :

This action was sustained by the referee upon two grounds: First. That the defendants, as trustees of the copartnership or joint stock association of Wells, Fargo & Co., after its dissolution, had disposed of a portion of the assets, in violation of their duties as trustees, whereby they became liable to plaintiff for the value of his stock or interest in such partnership, so disposed of.

Second. That as such trustees, the defendants had failed to use due diligence, in the conversion of the assets into money and its distribution among the stockholders, and that a receiver should be appointed of the assets remaining of said Wells, Fargo & Co., with the ordinary powers and duties of such receivers.

The evidence and the findings of fact by the referee, show that the joint stock association of Wells, Fargo & Co., was legally dis-

solved on the 1st day of November, 1866, and at the same time the good-will of the concern, with certain personal property of the value of $30,000 or $40,000, was sold and transferred to a corporation, taking the same name, and engaged in the same general business.

The defendants, as trustees, received on such sale 40,000 shares of the stock of such corporation, being at the rate of two shares of such new stock for each share of stock in the association. The large majority of the stockholders of the association consented to such arrangement and sale, and received the two shares of new stock in lieu of each share of old stock held by them. But plaintiff's testator refused to assent to the sale made by the trustees or to its terms, and declined to receive the new stock in lieu of his old or to ratify the acts of the defendants in making such sale.

It further appears that the arrangement for such sale of good-will and property, was agreed upon before the joint stock association was dissolved by the directors or trustees, and that such dissolution was made by reason of such prior arrangement and with the view of carrying the same into effect. The stock of said association at the time of its dissolution and at the time of such sale of its good-will and property was worth $285 per share, and plaintiff owned 100 shares of such stock.

The referee finds that the value of the property sold by the trustees was $200 per share of the association stock.

It is contended by the defendants, appellants, that the trustees of the old association, had the legal power to make such sale and take the stock of the new corporation in payment therefor, and that such conduct was not a breach of trust; that under article 13, of the articles of association, such power was given to the trustees after dissolution; that it was exercised in this instance for the manifest benefit of the beneficiaries; that by reason of the completion of the Pacific railroad, a new and more direct mode of transportation would soon be established; that Wells, Fargo & Co., could not secure a position to enable it to transact business upon such new route to profit or advantage; that as a consequence the business of Wells, Fargo & Co., by steamships, via the isthmus, would soon inevitably and of necessity be destroyed, and its stock become worthless, beyond assets on hand; that the trustees and members of

such association except plaintiff's testator and one or two others, recognizing the certainty of such results, and desiring to save as far as possible, the present, and secure the prospective value and continued productiveness of their stock, counseled and consented to the arrangement, made by the trustees for a sale of the good-will and property of the association ; that such arrangement was the most advantageous that could be made, securing a large representation of the old association in the new corporation, and such an exemption from competition, as must in the end, render the new stock valuable and profitable to its owners the defendants. And even if liable, the defendants insist that the value of plaintiff's stock, so extinguished by the sale, was not $200 per share and that the shares in the new stock of the corporation, were not worth one hundred per cent at the time of such sale, and that the referee erred in giving to such figures any vitality as evidence of damages.

The referee does not find that the trustees, defendants, acted with intentional bad faith in making such sale ; indeed, I think the case will warrant the conclusion, that the trustees were acting in the interest, and for the advantage of all the stockholders of the old association, and that by such action, the stockholders were saved from some portion of the loss, which must otherwise have followed the termination of the business of the old company.

Whether the association had been dissolved or not, it is evident that the time was near at hand, when, it could not carry on an express business by way of the isthmus and ocean steamers. Some company or companies would inevitably control such business by the Pacific railroad. The Wells, Fargo & Co. association had no foothold upon the latter route. Holladay's Overland Express Company, had peculiar advantages by such railroad, exclusive in their effect, if not in rights. The trustees, defendants, and the stockholders, seeing this, perfected an arrangement which was not so much a sale, as a consolidation of certain rival or hostile interests in one corporation, which should have a monopoly of the business and of the profits.

This, as a business arrangement, was wise, discreet and sagacious. As such it should be sustained if it legally is possible. The interests of one or two small stockholders, should not enable them to work the destruction of the interests of co-owners, or compel the

purchase of their stock, at fictitious or unreal prices, if it can be avoided.

Why then, has the referee charged the defendants with the value of plaintiff's stock interests, destroyed by their sale? Upon what principle, ought the defendants to be held liable for the cash value of the property sold?

It must be conceded that the directors of the Wells, Fargo & Co. association became trustees upon its dissolution. (*Butts* v. *Woods*, 37 N. Y., 317; *Bliss* v. *Matteson*, 45 id., 22.) As trustees they are bound to exercise their powers and discharge their duties, according to known and recognized principles of law. The same duties are due to a minority of the stockholders as to a majority. The plaintiff's testator might insist upon his rights, as against any misconduct of the trustees, with as much propriety as if he had owned a majority of the stock. Any misconduct of the trustees to the injury of plaintiff's testator would give to him a right of action therefor. Nor would it be material that the trustees had acted, as they believed, in the interests of all the stockholders, and not in bad faith. (*Gardner* v. *Ogden*, 22 N. Y., 327.) Upon the dissolution of the association it became the duty of the trustees to convert the assets into money, and distribute the proceeds among the stockholders. To a certain extent this has been done. A portion of such assets have not yet been distributed, and another portion, including the good-will of the old association, has been exchanged by the trustees for the corporate stock of a new Wells, Fargo & Co. This, I understand, the trustees had no right to do. They had no right to exchange the assets of the old association for the corporate stock of any corporations, without the consent of all the stockholders. (*Mann* v. *Butler*, 2 Barb. Ch., 362.)

Equally were they without authority, in making this partial exchange, without such consent. Stockholders of the old association could not thus, against their will, be forced into relations with the new company. (*Blatchford* v. *Ross*, 54 Barb., 42; *Hartford and New Haven Railroad* v. *Croswell*, 5 Hill, 383, 386.)

Whether McArdle should take stock in this new corporation, under the name of Wells, Fargo & Co., was a matter for him to decide. The trustees of the old association could not decide it for him against

his consent; such a power in the hands of trustees would be exceedingly dangerous, if not intolerable.

I understand it is well established, that a trustee cannot sell upon credit, without making himself personally liable for the price to be paid; much less can he exchange assets, in his hands for distribution among beneficiaries, for corporate stocks. If he shall do so, the *cestui que trust* may repudiate such sale and sue for his damages; that is, for the value of his interest in the property sold, or he may affirm the sale and recover the proceeds. The former remedy has been pursued in this case; and, in my judgment, such proceedings conform to the rules of law applicable to parties so related to each other as the parties to this action. As has been said, this whole arrangement, for exchange of the assets and good-will of the old association for the stock certificates of the new corporation, preceded the dissolution of the old association. Indeed, that dissolution was only necessary to enable the trustees to carry out their project. While, therefore, the dissolution was legal, as expressive of the unanimous will of the trustees and of a very large majority of the stockholders, it may yet be looked upon as an unnecessary act, consummated in aid of the unlawful act, and part of it.

In the new organization, the United States Express Company, in consideration of its waiving any right to competition, was to, and did, receive $350,000 in the new stock, at its par value. Several of these trustees (defendants) were also directors and large owners of the stock of the United States Express Company; and, to the extent that the United States Express Company was benefited by such $350,000 of the new corporation's stock, such trustees were also, as stockholders of said United States Express Company, benefited. A number of the trustees (defendants) were also made directors of the new corporation, in conformity, it may be assumed, with the understanding.

In all this it has been said, and I beg to repeat it, there was nothing dishonest, nothing looking to the special advantage of these defendants, nothing intended specially to wrong the plaintiff's testator, or any other stockholder of the old association.

It was simply an attempt, to perpetuate the interests and advantages of the old company in a new one, and, to accomplish such

purpose by means which the law will not permit. These defendants suffer, not by reason of any gross wrong on their part, but rather that such a precedent may not be offered for more unscrupulous men to take advantage of in the future.

It follows that the referee was correct in holding the trustees, defendants, guilty of a breach of trust, and liable for plaintiff's damages.

The amount of damages has been found by the referee at $200 per share. The value of the stock November 1st, 1866, is admitted to have been $285 per share. The referee seems to have established the value of the assets unsold, after payment of all liabilities, and deducted the percentage thereof for each share of stock from its market value, and thus arrived at the value of the interests sold by the defendants. Such valuation is also confirmed by the nominal value at par of the certificates of stock obtained upon such sale. What the actual value of the shares of the new corporation then were, or have since been, is not established in evidence. It is sufficient, however, that, in cases of this kind, every presumption on the question of value that can fairly be drawn from the evidence, will be indulged in against the trustees in the wrong. The value of plaintiff's stock, after dissolution, could not have remained at $285 per share. Nor is it easy to conceive that such a sum could have ever been realized, in the ordinary process of winding up the business by a sale of assets for cash. Still, we have the fact that McArdel could have sold, November 1st, 1866, at $285, and that he or his estate will receive, by virtue of this judgment, about that sum.

The judgment, therefore, indemnifies the plaintiff for any loss suffered, real or contingent.

I think the referee was right, in holding that a receiver of the remaining assets of the old association should be appointed.

It is now more than nine years, since the trustees have undertaken the duty of closing up the business. The facts developed in this case, would seem to justify not only the propriety, but the necessity of such action. The action of a receiver will be much more efficient than the efforts of a large number of trustees, widely separated from each other, absorbed in pursuits and cares of their own, and whose interests may be considered, in this case, as hostile

to the plaintiff's. These considerations, not less than the misconduct of the defendants, call for the appointment of a receiver of the remaining assets of Wells, Fargo & Co., the dissolved association.

For the reasons assigned, I think the judgment should be affirmed with costs.

Present — BOOKES and BOARDMAN, JJ.; LEARNED, P. J., not acting.

Judgment affirmed with costs. Order affirmed, with ten dollars costs, and expenses of printing.